UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO P. FONTANA,

                    Petitioner,                           Case Number 14-20141
v.                                                        Honorable David M. Lawson

UNITED STATES OF AMERICA,

                    Respondent.
_____/

## OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE

Antonio Fontana, a 59-year-old internet predator, posed as a 16-year-old boy, convinced teenage girls to perform sex acts in front of their computer cameras, which Fontana recorded, and then used those pornographic videos to extort them into engaging in ever more invasive sexual acts, which he also recorded.  Charged with twelve federal crimes, Fontana pleaded guilty under a plea agreement to four of them: enticing one of the minor girls to engage in illegal sexual activity, production of child pornography, and using the internet to extort the two girls.  His convictions and 30-year sentences were affirmed on appeal.  Fontana now moves to vacate his sentence, contending that his appellate lawyer rendered constitutionally deficient performance.  Fontana identifies two issues that he believes his appellate lawyer should have raised.  But because both of those issues would have been unsuccessful (actually, boarding on frivolous), appellate counsel did not perform ineffectively by not raising them.  Fontana's motion, therefore, will be denied.

I.

Fontana is a 59-year-old man from Canada.  Throughout 2013 and early 2014, he adopted the internet persona of a 16-year-old boy named Jason, and he preyed on girls across the world, including two from Michigan.  Fontana befriended the girls and convinced them to perform sexual acts, recorded them, and used the recordings to torment and control them.

Fontana extorted two victims in the Detroit metropolitan area. He enticed a 15-year-old girl (MV-1) into performing sexual acts, which he recorded, and then ordered her to do what he wanted under the threat of posting the images online. His demands included being in front of her webcam at certain times, sleeping in a certain position so he could watcher her, and avoiding social events unless she obtained his permission. Fontana eventually pressured MV-1 to convince her 14-year-old friend, MV-2, to perform sexual acts, which he recorded and used to extort MV-2 as he did MV-1.

MV-1 tried to sever contact with Fontana in late 2013, but he threatened her and her family. Fontana left several voice messages for MV-1's mother, but she did not respond. Fontana then sent MV-1's mother explicit images of her daughter, called and emailed MV-1's school — including sending partially nude photographs to her school principal — and sent explicit images to 80 members of her church.

Canadian police eventually arrested Fontana on February 23, 2014. He was extradited to the United States in June 2015, where a twelve-count federal indictment was waiting for him. During the indictment and extradition process, investigators seized and analyzed Fontana's computer. The computer was found to have over 1,000 images and multiple videos of additional women and girls, from which investigators determined that Fontana had engaged in similar conduct with at least fifty victims.

The grand jury returned its indictment on March 13, 2014. The charges included: coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b) (Counts 1 and 2); production of child pornography in violation of 18 U.S.C. § 2251(a) (Counts 3 and 4); distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2) (Counts 5 through 7); internet extortion in

violation of 18 U.S.C. § 875(d) (Counts 8 and 9); and cyber-stalking in violation of 18 U.S.C. § 2261A(2)(A) (Counts 10 and 12).

Fontana reached an agreement with the government to plead guilty to four offenses in exchange for a dismissal of the other eight.  He entered his guilty pleas on January 12, 2016, to one count of coercion and enticement, one count of production of child pornography, and two counts of internet extortion.  The written plea agreement recited the elements of each offense, along with the maximum and minimum penalties they carried.  The plea agreement informed Fontana that the crime charged in Count 1 (coercion and enticement) carried a statutory sentencing range of 10 years to life in prison, and  a conviction on Count 3 (production of child pornography) would subject him to a statutory sentencing range of 15 to 30 years in prison.  Fontana and his attorney signed the agreement and initialed every page.

The Court held Fontana's guilty plea hearing on January 12, 2015.  Fontana acknowledged that he received a copy of the indictment and that his attorney explained the elements of the crimes to which he was pleading guilty and how the evidence offered at trial would satisfy those elements. The government summarized the material provisions of the plea agreement, including the statutory penalties that Fontana faced and the advisory guideline range that the parties estimated: life in prison.  The Court then recited the statutory penalties again, specifically informing Fontana that Count 1 carried a sentencing range of 10 years to life in prison, and Count 3 carried a sentencing range of 15 to 30 years in prison.  Fontana acknowledged that he understood the terms of the agreement and confirmed that his attorney had explained how the sentencing guideline range was calculated.  He also admitted that he knew that he was facing a potential sentence of life in prison and acknowledged that the Court would calculate his ultimate sentence after considering, among other things, the presentence report that would be prepared.

Before Fontana entered his guilty plea, the Court also explained the essential elements of each of the crimes to which he would be pleading guilty. Fontana affirmed that he understood the elements of each of the offenses. He then provided the factual background for his crimes. And when asked whether he wanted the Court to accept his guilty plea, Fontana replied, "absolutely."

After the plea hearing, the probation department prepared a presentence report, in which it calculated an advisory guideline range of life in prison. The parties then filed sentencing memoranda. In his memorandum, Fontana argued that, under the U.S.-Canada Extradition Treaty, the Court could not consider victims other than MV-1 and MV-2 when applying the section 3553(a) factors. The Court rejected Fontana's argument at the sentencing hearing; it concluded that a life imprisonment guideline applied to the case, but that a lower, 30-year sentence sufficed.

After the Court issued its judgment, the government filed a request for restitution. The Court held a hearing on the government's motion and awarded restitution in the amount of $47,414.10 in an amended judgment.

Fontana timely filed two appeals, one from the first judgment and the second from the amended judgment. In the first appeal, he argued that the Court erred at sentencing by considering victims other than MV-1 and MV-2. In the second appeal, he contended that the Court assessed too much restitution. The Sixth Circuit affirmed the convictions and sentences in a published opinion. *United States v. Fontana*, 869 F.3d 464 (6th Cir. 2017). In a separate opinion, it reversed the restitution award in part, concluding that the award was heavy by $2,758.

The Court entered another amended judgment on December 14, 2017, reducing the restitution award as the Sixth Circuit directed.

On October 15, 2018, Fontana timely filed the present motion to vacate his sentence under 28 U.S.C. § 2255. He contends that his appellate counsel provided constitutionally ineffective

assistance because he did not argue that Fontana was improperly informed at his plea hearing about his sentencing exposure under Count 3 and the elements of Count 1. The government responded that the record conclusively belies Fontana's claims in several places. In a reply, Fontana asks for an evidentiary hearing.

II.

A federal prisoner challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). That statutory language has been read to mean that the prisoner must "allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

Fontana here alleges that there were defects in the plea proceedings by which he was misinformed about the nature of the crimes and the potential penalties. He did not raise those issues on direct appeal. A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998). However, Fontana says that those arguments were not presented to the court of appeals due to the errors of his appellate attorney. Claims of ineffective assistance of counsel are properly raised in a section 2255 motion. *United States v. Graham*, 484 F.3d 413, 421-22 (6th Cir. 2007) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)). Therefore, a claim that "cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful

claim that counsel provided ineffective assistance." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

A federal defendant raising a claim of ineffective assistance of appellate counsel must satisfy the two-element test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). To succeed, the petitioner "must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland*, 466 U.S. at 687). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. An attorney's deficient performance is prejudicial if, but for counsel's performance, the result of the proceedings would have been different. *Id.* at 694.

The right to effective assistance of counsel includes the right to effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Carpenter v. Mohr*, 163 F.3d 938, 946 (6th Cir. 1998), *rev'd on other grounds sub nom. Edwards v. Carpenter*, 529 U.S. 446 (2000). These standards apply to claims of ineffective assistance of appellate counsel raised in a motion under section 2255. *Ballard v. United States*, 400 F.3d 404, 407-08 (6th Cir. 2005). To prove prejudice caused by appellate counsel's failure to raise an issue on appeal, however, the petitioner must show a "a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland*, 356 F.3d at 699 (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Appellate counsel's strategic decisions are entitled to a great deal of deference. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (reiterating that "the standard for judging counsel's representation is a most deferential one"). A criminal defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue on appeal. *Jones v. Barnes*, 463

U.S. 745, 751 (1983). The "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52) (quotation marks omitted). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Robbins*, 528 U.S. 259, 288 (2000) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *see also Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987) (appellate counsel may be ineffective where the trial error is obvious from the record and "must have leaped out upon even a casual reading of the transcript"). But no appellate lawyer can be faulted for not raising a frivolous issue. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011) (stating that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007))); *see also Knowles*, 556 U.S. 111, 123 (2009) (reiterating that the "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" in order to avoid a finding of deficient performance under *Strickland* ).

Fontana argues that his appellate attorney was constitutionally ineffective because he did not argue on appeal that Fontana was improperly informed at his plea hearing about: (1) his sentencing exposure under Count 3, which charged production of child pornography; and (2) the elements of Count 1, which charged coercion of the minor girls. He therefore requests that the Court vacate his sentence, allow him to withdraw his allegedly involuntary guilty plea, and allow

him to proceed to trial.  He also requests an evidentiary hearing so he can ask his appellate lawyer why he did not raise those claims on appeal.

Fontana is not entitled to an evidentiary hearing on his claims.  As the Sixth Circuit has explained, no hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)); *see also Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (holding that "evidentiary hearings are not required when . . . the record conclusively shows that the petitioner is entitled to no relief."). Moreover, "when the trial judge also hears the collateral proceedings . . ., that judge may rely on his recollections of the trial in ruling on the collateral attack."  *Blanton*, 94 F.3d at 235 (citing *Blackledge v. Allison,* 431 U.S. 63, 74 n.4 (1977)).  There is no need to hold a hearing to determine that Fontana is not entitled to relief on his claims.  The record conclusively shows that Fontana was given the information about the charges and penalties in several ways and on multiple occasions.  And it is obvious why appellate counsel did not raise those arguments.

### A.

Count 3 of the indictment charged Fontana with producing child pornography in violation of 18 U.S.C. § 2251.  The penalty for violating that statute was prison for at least 15 years but not more than 30 years.  Fontana now says that he was misled into believing that the maximum penalty was life in prison, which compelled him to plead guilty.  He says that if he knew he was facing no more than 30 years, he may have opted for a trial.  He says his lawyer should have made that argument to the court of appeals.

That argument would not have gotten very far.  Fontana received a complete and accurate statement of the penalty ranges for each count to which he pleaded guilty.  The range was well

documented in the acknowledgement Fontana signed at his arraignment.  ECF. No. 10.  Then it

was set forth on the first page of Fontana's plea agreement, which he initialed:

> Count 1 [18 U.S.C. § 2422(b), coercion and enticement], a mandatory minimum of
> ten (10) years and up to life in prison;
>
> Count 3 [18 U.S.C. § 2251(a), production of child pornography], a mandatory
> minimum of fifteen (15) years and up to thirty years in prison;
>
> Counts Nine and Eight [ 18 U.S.C. § 874(d), internet extortion], up to two (2) years
> in prison on each count.

Plea Agreement, ECF No. 37, PageID.85.  Fontana acknowledged on the record that he read and

signed the plea agreement.  And then the government and the Court outlined the statutory penalty

ranges to Fontana at the plea hearing:

> THE COURT: The maximum sentence with Count 3 is up to 30 years in prison,
> with a mandatory minimum sentence of . . . at least 15 years and a maximum fine
> of up to $250,000.  Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.

Plea Tr. ECF No. 68, PageID.695, 709.  That satisfied Federal Rule of Criminal Procedure 11(b),

requiring the Court to inform the defendant of the "maximum possible penalty, including

imprisonment, fine, and term of supervised release" for Count 3 and its "mandatory minimum

penalty."  Fed. R. Crim. P. 11(b)(1)(H)-(I).

It is true that the plea agreement stated that Fontana's advisory guideline range was life in

prison, which was accurate because he also pleaded guilty to enticing the minor child to engage in

illegal sexual activity (Count 1), a crime punishable by a prison term of life.  The Court also

cautioned Fontana that his advisory guideline range might be as high as life in prison, but that the

Court would not finalize the exact range until after it received input from the probation department

and calculated its own guideline range.  The probation department calculated the same guideline

range as the parties: life in prison.  Fontana appears to conflate the advisory sentencing guideline

range with Count 3's maximum statutory penalty.  But at the plea hearing, the Court explained that the sentencing guideline range "matches the possible maximum sentence that Congress authorized under these criminal statutes."  Plea Tr. ECF No. 68, PageID.704.  Because the maximum sentence for Count 1 was life imprisonment, the advisory guideline range was not capped by the statutory maximum term.  But the Court never stated that Count 3 exposed the petitioner to anything more than the statutory 30-year maximum.  *See* 18 U.S.C. § 2251(e).  Neither did the assistant United States attorney or Fontana's own lawyer.

Fontana did not receive bad advice about the maximum penalty on Count 3 from the Court or anyone else.  Because the record conclusively shows that, appellate counsel had no issue to raise on that score.  Counsel did not deviate from prevailing professional norms by not raising a frivolous issue on appeal.  *See Jalowiec*, 657 F.3d at 321-22

## B.

Fontana also argues that he was inadequately informed about the elements of Count 1, which charged him with coercing and enticing "MV-1" to engage in illegal sexual activity, 18 U.S.C. § 2422(b), because neither the government nor the Court identified the underlying unlawful "sexual activity" that he coerced, and the government failed to demonstrate a factual basis for any such sexual activity.  He faults appellate counsel for not raising this issue on appeal.  But appellate counsel would have found no support in the record to advance such a claim.

An individual violates section 2422(b) "if he or she knowingly uses interstate commerce to persuade, induce, entice, or coerce 'any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so.'"  *United States v. Hart*, 635 F.3d 850, 854 (6th Cir. 2011) (citing 18 U.S.C. § 2422(b)).  "[T]he term 'sexual activity for which any person can be charged with a

criminal offense' includes the production of child pornography, as defined in section 2256(8)." 18 U.S.C. § 2427.   "Congress has made a clear choice [in section 2422(b)] to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves." *Hart*, 635 F.3d at 854. (citing *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000)).

Under Rule 11(b)(1)(G), district courts "must inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading" before accepting the defendant's guilty plea.   The "district court must be satisfied, after discussion with the defendant in open court, that the defendant understands the elements of the offense." *United States v. Lalonde*, 509 F.3d 750, 760 (2007) (citing *McCreary-Redd*, 475 F.3d 722, 723 (2007)). "At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004).

However, the Supreme Court has "never held that the judge must himself explain the elements of each charge to the defendant on the record." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).  Instead, a guilty plea is valid "where the record adequately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own competent counsel." *Ibid.*  And "[w]here a defendant is represented by competent counsel, the court may usually rely on that counsel's assurance that the defendant has been properly informed." *Ibid.* Moreover, the "Supreme Court has suggested that providing the defendant with a copy of the indictment prior to his plea of guilty creates a presumption that the defendant was informed of the nature of the charge against him."   *Lalonde*, 509 F.3d at 760 (citing *Bousley* 523 U.S. at 618 (1998)).

Fontana was represented by able counsel, who explained the elements of the crimes to which Fontana was pleading guilty and how the evidence offered at trial would satisfy those

elements. Fontana acknowledged as much on the record.  Alone, the fact that Fontana admitted that counsel explained the elements of Count 1 to him is sufficient to establish that Fontana was properly informed of the nature of the charge.  *Bradshaw*, 545 U.S. at 183.

Fontana also acknowledged that he reviewed the indictment himself, which informed him that the unlawful "sexual activity" he coerced included the "production of child pornography, as described in 18 U.S.C. § 2256(8) and child sexually abusive activity or material, in violation of [Michigan Compiled Laws] § 750.145c."  Indictment, ECF No. 1, PageID.3-4.  The indictment parrots 18 U.S.C. § 2427, which states that "the term 'sexual activity for which any person can be charged with a criminal offense' includes the production of child pornography. . . ."  Fontana's acknowledgement that he read and understood the indictment provides another basis to presume that Fontana "was informed of the nature of the charge against him."  *Lalonde*, 509 F.3d at 760. What's more, the elements were also outlined in the parties' Rule 11 plea agreement, which included the elements for both Count 1 (coercion and enticement) and Count 3 (production of child pornography).  Plea Agreement, ECF No. 37, PageID.86-87.

And not only did Fontana admit that he reviewed the indictment, plea agreement, and elements of the charges with his trial counsel, but the Court also outlined the elements in open court during Fontana's plea hearing.  Plea Tr. ECF No. 68, PageID.712-714.  Concerning Count 1, the Court told Fontana:

> [T]he government must prove, first, that you knowingly persuaded, induced, coerced, or enticed an individual under the age of 18 to engage in unlawful sexual activity.  Unlawful sexual activity includes the lascivious exhibition of genitals or engag[ing] in sexual acts.
>
> Secondly, that you used as a means or facility of interstate commerce . . . a facility of interstate commerce or foreign commerce in order to engage in that enticement.
>
> And third, that you, in fact, believed the individual was less than 18 years of age at the time.

*Id.* at PageID.712.  The Court also outlined the elements of production of child pornography:

> In order to convict  you of [production of child pornography], the Government must prove that you employed, used, persuaded, induced, enticed, or coerced a minor, that is, a person under the age of 18, to engage in sexually-explicit conduct for the purpose of producing a visual depiction of that conduct.
>
> Second, . . . that either the visual depiction was actually transmitted using a means or facility of interstate or foreign commerce, or that you knew or had reason to know that the visual depiction would be transmitted using any means or facility of interstate or foreign commerce, or that you knew or had the reason to know that . . . the visual depiction was produced or transmitted using materials that were mailed, shipped, or transported in or affecting foreign commerce.

 *Id.* at PageID.712-13.  Fontana said that he understood.

Fontana also admitted facts establishing the unlawful "sexual activity."  First, he acknowledged that his trial counsel explained how the evidence offered at trial would satisfy the elements of the crimes to which he pleaded guilty.  Second, the plea agreement, which Fontana signed, included a detailed factual recitation for his guilty plea, including his production of child pornography.  Plea Agreement, ECF No. 37, PageID.88-89 (Fontana "recorded (using a tablet and a laptop computer) many of the sexual acts he forced [MV-1] to perform, which including having [MV-1] insert various objects (including brushes, fruits and vegetables) inter her vagina and anus.").  Finally, the Court reviewed the factual basis on the record in open court:

> THE COURT: . . . [D]id you persuade [MV-1] to engage in sexual conduct that was depicted over a web cam?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: And did you record that conduct?
>
> THE DEFENDANT: Yes, your Honor.

Plea Tr., ECF No. 68, at PageID.715.

The record overwhelmingly established that Fontana understood the elements and factual basis of the offense.  *Lalonde*, 509 F.3d at 760; *Stumpf*, 545 U.S. at 183.  Faced with this record,

it would have been folly for Fontana's appellate lawyer to argue that the defendant was not informed of the elements of Count 1.

In his reply, Fontana asserts that the government conceded that appellate counsel's performance was deficient because it stated in its response, "[i]f the Court somehow concluded that Fontana did not knowingly plead guilty to Count 1, Fontana would still face the same guideline range (life in prison)." Government's Resp. ECF No. 107, PageID.1029. But this statement was a hypothetical argument made in the alternative, not a concession. The immediately preceding sentence puts the statement in context: "It is also unclear how Fontana can show prejudice even if he could somehow claim that his appellate attorney performed in a constitutionally ineffective manner (which he cannot)." *Ibid.*

There is no doubt that Fontana understood the nature of the charges to which he pleaded guilty. Appealing the issue would have been futile. Fontana's appellate counsel did not perform deficiently by not raising it on appeal.

### III.

The petitioner has not shown that his appellate attorney rendered constitutionally ineffective assistance.

Accordingly, the petitioner's motion to vacate his sentence (ECF No. 101) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:  April 17, 2020